Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF
Complete

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**KEITH BRASWELL, et al.,**              )
                                         )
         **Plaintiffs,**                 )
                                         ) CIVIL ACTION NO.  2:07-CV-833
**vs.**                                  )
                                         )
**RICHARD ALLEN, et al.,**               )
                                         )
         **Defendants.**                 )

**MEMORANDUM BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

Come now Defendants Richard Allen, Commissioner of the Alabama Department of Corrections and Charles Hadley, former Warden at the Alabama Department of Corrections, to submit this memorandum brief in support of their contemporaneously filed motion for summary judgment.   Defendants Allen and Hadley are entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because Plaintiffs have failed to create a genuine issue of material fact and Defendants are entitled to judgment as a matter of law.  In support of their motion for summary judgment, Defendants have also, under separate cover, submitted evidentiary materials.

STATEMENT OF UNDISPUTED MATERIAL FACTS

**General**

The Plaintiffs in this action were all ADOC employees assigned to the Red Eagle Honor Farm in 2006.  Plaintiff Smiley is a Correctional Officer II (Sergeant) and Plaintiffs Braswell and Underwood are Correctional Officers I. Although it is difficult to ascertain, the complaint seeks

1

injunctive and declaratory relief, compensatory, and punitive damages under 42 U.S.C. § 1981 & 1983 for a violation of race discrimination (Count I) and retaliation and claims for a violation under Title VII for race discrimination and retaliation (Count II). They assert claims against Richard Allen, in his capacity as Commissioner of the Alabama Department of Corrections (official capacity) and Charles Hadley, in his official capacity as Warden of the Red Eagle Honor Farm and individually.

On March 28, 2006, at 12:15 pm, Warden Hadley (Defendant) observed Sgt. Smiley leaving the facility prior to the end of his assigned shift, which was from 7:00 am to 4:00 pm. Hadley checked the time book for an approved leave slip and found none. Hadley then checked the sign in/out log and discovered that Sgt. Smiley signed in at 6:00 am and had signed out at 2:00 pm. Hadley then reviewed the sign in/out log for the previous day, March 27th, and discovered that Sgt. Smiley had signed in at 6:00 am and had signed out at 2:00 pm, without permission and against policy and procedure. Shortly thereafter, Hadley had Smiley come to his office to explain why he had violated policy and procedure, specially falsifying the sign in/out log, leaving work without authorization, and not working his assigned shift. Also present was Arnold Holt and Lt. Lane. Smiley would not give the Warden an explanation. Hadley told Lt. Lane to have Sgt. Smiley write a written statement concerning the incident. Pursuant to policy and procedure, Hadley sent a request to ADOC Personnel Division recommending a Written Reprimand for the violation of policy and procedure. A written reprimand is the first step of corrective disciplinary action within the ADOC. ADOC Personnel instructed Hadley to change the written reprimand to a five-day suspension, which was done. Sgt. Smiley was given a hearing on the suspension on May 23, 2006, wherein then Warden James DeLoach was the Hearing Officer. Sgt. Smiley was represented by Julian McPhillips. According to Plaintiffs Braswell and

Underwood, Sgt. Smiley asked them to write a statement explaining his (Smiley) good character to be presented to Hearing Officer. Both Braswell and Underwood wrote and signed statements and both statements were entered into evidence at the hearing. The statements were really not about Smiley's character, but were, in fact, unfounded criminal accusations against their supervisors and fellow employees and about incidents of tardiness of some of Red Eagle's employees. The Hearing Officer found Smiley guilty and recommended a written reprimand. Warden Hadley concurred with the Hearing Officer's recommendation. The Commissioner approved the written reprimand. Hadley issued Smiley a written reprimand on June 9, 2006. Upon receipt of the statements at the hearing, Warden Hadley requested and received an investigation of the allegations by the ADOC Investigation & Intelligence Division. That investigation concluded that Braswell's and Underwood's statements were unsubstantiated.

The ADOC has well establish policy and procedures against discrimination which is known by ADOC employees. None of these Plaintiffs tried to seek redress under this policy. (Exhibit # 23). All of these Plaintiffs are alleging discrimination and/or retaliation as a result of disciplinary proceedings. ADOC followed its disciplinary policy and procedures established in Administrative Regulation # 208. (Exhibit # 24).

## Smiley

Pursuant to ADOC regulations, an employee may submit a rebuttal in response to a written reprimand and the Warden considers the rebuttal and decides whether or not the reprimand should stand. Sgt. Smiley did, in fact, file a rebuttal and Warden Hadley considered it and decided that the reprimand was warranted and should stand. In his rebuttal, Sgt. Smiley admits that he was wrong, stating "[I]t is true that I did not properly coordinate with Warden

Click Here & Upgrade
Expanded Features
Unlimited Pages
PDF
Complete
Documents

Hadley and get his direct permission to change my work hours ……" (Exhibit # 1).  The rebuttal focuses on the fact that Smiley believes that a written reprimand was too harsh, not that he didn't violate the rules and regulations.

Sgt. Smiley received no adverse employment action as a result of the written reprimand. His employment annual appraisal for 2006/2007 reflects a rating of "exceed standards". (Exhibit # 2).  As a result of that rating Sgt, Smiley received a two-step pay increase on his anniversary date of April 1, 2007. (Exhibit # 3)  A two-step increase is the maximum increase allowed by State Personnel.

Smiley filed a charge of discrimination with the EEOC on September 11, 2006, alleging race discrimination as a result of his written reprimand. (Exhibit # 21).


**Braswell**

Braswell was assigned to the third shift at Red Eagle. At times Sgt. Smiley was his immediate supervisor. At the May 23rd hearing for Sgt. Smiley, Braswell testified on behalf of Sgt. Smiley and presented a written statement**.** (Exhibit #4)  In that statement Braswell accuses Warden Hadley of having inmates build hunting shooting houses for (his) personal gain; accuses Warden Hadley of authorizing inmates to make barbecue grills with state property for (his) personal gain; accuses Hadley, Lt. Naile, and CO I Odom of bringing rifles less than 25 feet from inmates on state property; accuses Lt. Naile of authorizing inmates in the maintenance and lawnmower shop to work on his (Naile's) personal hunting vehicle; accuses Naile and Odom of hunting while on state time;  and accuses several employees at Red Eagle of coming to work late without having to do any paperwork. As stated earlier, those allegations, some, if true, would be

a criminal violation under the Alabama Ethics Act, were found to be unsubstantiated on June 13, 2006. (Exhibit # 5).

Since Braswell had accused the Warden, Lt. Naile, and a fellow officer of criminal activity and accused other employees of violations of ADOC policies and procedures, and to give Braswell a 'fresh' start under a new Warden and supervisor, and in the best interest of the Department, the Commissioner ordered a direct transfer of Braswell from Red Eagle to the Draper Correctional Facility on June 22, 2006. (Exhibit # 17).

Based upon the finding of the I&I investigation, Hadley requested of the ADOC Personnel Division that Braswell be dismissed. ADOC Personnel instructed Hadley to proceed with a twenty day suspension, set the hearing date for October 19, 2006 at 9:00 am, and appointed Warden Willie Thomas as the Hearing Officer. (Exhibits # 6 & 16)

On October 19, 2006, Warden Thomas presided over Braswell's suspension hearing. Hadley was the presenting officer and Braswell was represented by Jason Manasco. Both sides presented testimony and evidence. Hearing Officer Thomas found Braswell guilty of making false statements and recommended a twenty day suspension. After a review of entire file, the Commissioner suspended Braswell but reduced the suspension from twenty days to ten days. (Exhibit # 11).

Braswell filed a charge of discrimination with the EEOC on September 18, 2006, alleging race discrimination and retaliation as a result of his suspension. (Exhibit # 19).

**Underwood**

Underwood, like Braswell, was assigned to the third shift at Red Eagle. At times Sgt. Smiley was his immediate supervisor. At the May 23rd hearing for Sgt. Smiley, Underwood did

not testify but presented a written statement. (Exhibit #7). That statement accused employees at Red Eagle of authorizing inmates to do "personal projects" for personal gain; accused a supervisor of giving an inmate a weapon; accused a supervisor of taking state property home for personal gain; and accused employees of being late for work. As stated earlier, those allegations, some, if true, would be a criminal violations under the Alabama Ethics Act, were found to be unsubstantiated on June 13, 2006.

Also like Braswell, Underwood had accused the supervisors of criminal activities and accused other employees of violations of ADOC policies and procedures, and to give Underwood a 'fresh' start under a new Warden and supervisor, and in the best interest of the Department, the Commissioner ordered a direct transfer of Underwood from Red Eagle to the Staton Correctional Facility on June 22, 2006. (Exhibit #8)  Based upon the finding of the I&I investigation, Hadley requested of the ADOC Personnel Division that Underwood be dismissed. ADOC Personnel instructed Hadley to proceed with a ten day suspension, set the hearing date for October 19, 2006 at 9:00 am, and appointed Warden Willie Thomas as the Hearing Officer. (Exhibit #9 & 17)

Also like Braswell, on October 19, 2006, Warden Thomas presided over Underwood's suspension hearing. Hadley was the presenting officer and Braswell was represented by Jason Manasco. Both sides presented testimony and evidence. Hearing Officer Thomas found Underwood guilty of making false statements and recommended a ten day suspension.  (Exhibit # 18). After a review of entire file, the Commissioner suspended Underwood but reduced the suspension from ten days to five days.  (Exhibit #10).

Underwood filed a charge of discrimination with the EEOC on August 23, 2006, alleging race discrimination and retaliation as a result of his suspension. (Exhibit #19).  Underwood's charge of discrimination does not allege facts of retaliation.

## ARGUMENT

I.     **SINCE PLAINTIFFS UNDERWOOD AND BRASWELL FAILED TO FILE THEIR COMPLAINT WITHIN NINETY DAYS FROM THE TIME EACH RECEIVED THEIR "RIGHT TO SUE" LETTER, THEIR TITLE VII CLAIMS ARE BARRED AS A MATTER OF LAW.**

Plaintiffs Roderick Underwood and Keith Braswell failed to file their Title VII claims in this matter within the ninety days allowed after the receipt of a right-to-sue letter.  According to the Justice Department letter dated June 4, 2007, Underwood and Braswell were forwarded their right-to-sue letters on or before June 4 (Exhibits 12, 14, and 15), yet this action was not filed until September 14, 2007.  [Doc. 1]

Underwood and Braswell cannot benefit from the fact that their Co-Plaintiff  Anthony Smiley received his right-to-sue letter August 1, 2007 (Exhibit 13) and was able to file suit on September 14, 2007, *within* the ninety-days permitted.  [Doc. 1]  In other words, the law does not allow Co-Plaintiffs like Underwood and Braswell to "piggyback" or benefit from the "single-filer" exception based on the date of Smiley's right-to-sue letter because Underwood and Braswell filled separate EEOC claims.  *See* Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 558 (11th Cir. 1997) (explaining that "where a plaintiff has filed an individual EEOC charge, such a plaintiff should be required to rely upon his or her own EEOC charge, and cannot reasonably rely upon the other claimant's charge. Thus, we conclude that Collins may not 'piggyback' onto Gitlitz's ADEA claim.")

II.    **SINCE DEFENDANT HADLEY WAS MERELY THE CHARGING OFFICER AND NOT THE FINAL DECISION-MAKER WITH RESPECT TO EMPLOYMENT DECISIONS CHALLENGED, HADLEY IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.**

It is undisputed that Defendant Hadley lacked the authority to make any final decision with respect to the Plaintiffs' employment status and that such authority was vested in Commissioner Allen alone.  On this basis, if not for any other, all claims with respect to the Plaintiffs' alleged adverse employment actions against Defendant Charles Hadley are due to be stricken on summary judgment.  *See*, Casanova v. Pre Solutions, 228 Fed. Appx. 837, 841-43 (11th Cir. 2007) (noting that the person alleged to have had the discriminatory intent was not the decision-maker with respect to challenged employment actions).

III.    **PLAINTIFFS HAVE FAILED TO PROVE THE NECESSARY ELEMENTS FOR A TITLE VII/FOURTEENTH AMENDMENT RACE DISCRIMINATION CLAIM.**

Federal courts have clearly set out the requirements for the maintenance of a Title VII race discrimination claim. ⌐A disparate-treatment claim comprises two elements: an employment practice, and discriminatory intent.⌐ Ledbetter v. Goodyear Tire & Rubber Co., Inc., 500 U.S. ____, 127 S.Ct. 2162 (2007). ⌐A disparate-treatment challenge focuses exclusively on the intent of the employer.⌐ Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 1002 (1998). To establish race discrimination/disparate treatment, the Plaintiffs bear the burden of proving that the Defendants intentionally discriminated against them because of their race. Cooper v. Southern Co. 390 F.3d 695, 723 (11th Cir. 2004)  Specifically, "[t]o make out a prima facie case of racial discrimination a plaintiff must show (1) [h]e belongs to a protected class; (2) [h]e was qualified to do the job; (3) [h]e was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside her class more favorably. Crawford v. Carroll  529

8

F.3d 961, 970 (11th Cir. 2008).  The Plaintiffs may do so by direct evidence or by circumstantial evidence. [1]

Defendants contend that there is no direct evidence of discrimination in this case, therefore the Plaintiffs are held to applying the familiar *McDonnell Douglas* burden-shifting framework. McDonnell Douglas Corp. V. Green, 411U.S. 792, 802-04 (1973).  Therefore, applying the McDonnell Douglas standards to the instant case, the Plaintiffs must first prove a prima facie case of race discrimination/disparate treatment. To prove a prima facie case in this action, the Defendants argue that these Plaintiffs must show (1) that they are a member of a protected class; (2) that the Plaintiffs suffered an adverse employment action; and (3) that white officers who were similarly situated were <u>not</u> treated similarly. Once the Plaintiffs have established a prima facie case, the burden shifts to the Defendants to proffer a non-discriminatory reason for the action and after that, the burden shifts back to the Plaintiffs to prove that the proffered non-discriminatory reason is pretextual.

Direct evidence of discrimination is evidence that, if believed, would establish that the employer's decision was based upon discriminatory intent without inference or presumption. E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir.2000) (quoting Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998)). Evidence that is subject to multiple interpretations or that merely suggests discrimination does not constitute direct evidence. Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir.1997). Discriminatory statements may constitute direct evidence of discrimination where such statements are by decision-makers or are related to the decision-making process. See Standard, 161 F.3d at 1330

---

[1] Since the claims for a race discrimination claim under Title VII and the Fourteenth Amendment are essentially the same, Defendants will not make a separate argument with respect the race discrimination claims made under Section 1983 by Plaintiffs.

("remarks by non- decision-makers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination."); *see also* Trotter v. Board of Trustees of the Univ. of Alabama, 91 F.3d 1449, 1453 (11th Cir.1996) ( "Statements indicating racial bias on the part of a decision-maker in an employment setting can constitute direct evidence of racial discrimination in Title VII cases.").

First, with respect to Smiley, the Plaintiffs cannot prove that he suffered an adverse employment action. An adverse employment action has also by referred to as a "tangible employment action". Wilbur v. Correctional Services Corp., 393 F.3d 1192 (11th Cir. 2004). That case goes on to say that the plaintiffs must "demonstrate "a serious and material change in the terms, conditions, and privileges of employment." Wilbur at page 1202, quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001). In this case, Smiley is working at the same job he had before the disciplinary hearing, he holds the same title he had before the disciplinary hearing, has received an "exceeds expectations" evaluation and received the highest wage increase allowable.

Second, Commissioner Allen, the final decision-maker responsible for the employment actions taken, had a legitimate non-discriminatory reason for the employment decisions he made. With respect to Plaintiff Smiley, Commissioner Allen was presented with findings obtained through hearings (which were fully protective of Smiley's due process rights) indicating that Smiley has falsified his time records—a charge with Smiley essentially admitted in his statement to the disinterested, third-party hearing officer.  Similarly, with respect to Braswell and Underwood, Commissioner Allen was presented with findings of the hearing officer and the result of an I & I (Intelligence and Investigation) report that each officer had made false or unsubstantiated charges and claims against their supervisor, Charles Hadley and Lt. Naile.

Obviously, the falsification of work records and making of false or unsubstantiated criminal accusations were legitimate, non-discriminatory reasons for the employment decisions made in this case. The transfer of Braswell and Underwood was grounded in the concern that they could no longer function effectively at the Red Eagle Correctional Institute, a relatively small facility, under the circumstances, and that their services would be more effectively utilized in another facility. The transfers were in the best interest of the employees (Braswell and Underwood) and the Department.

Third, Plaintiffs have not and cannot prove that similarly situated white officers, those found to have falsified work records and to have brought false or unsubstantiated criminal accusations charges against their superior(s), were treated differently than the Plaintiffs.

Finally, Administrative Regulations instituted by the Commissioner (and/or his predecessors) prohibit discrimination (AR-206) and provide for a remedy in cases which must be utilized where discrimination is alleged (AR-208). Plaintiffs failed to utilize these administrative remedies therefore their claims are barred. DOC cannot be held liable for any alleged discrimination because the Plaintiff has failed to avail himself of the grievance procedures in place to prevent or correct discrimination in the workplace. The United States Supreme Court has recognized that employers may assert an affirmative defense in discrimination cases:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing [or racially harassing] behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2293 (1998); Burlington Industries, Inc., v. Ellerth. 118 S. Ct. 2257, 2271 (1998). As long as there has been no tangible adverse

employment action taken against the Plaintiff, the affirmative defense applies. The Court has described tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington, 118 S. Ct. at 2268. Absent such tangible employment action, the employer will have the opportunity to prove its affirmative defense. Congress did not intend Title VII to protect mere title or labels; an individual who sues only to maintain a purely gratuitous working relationship does so without the protection of that statute. Llampallas v. Mini-circuits, Lab, Inc., 163 F.3d 1236, 1244 (11th Cir. 1998) (plaintiff did not receive any compensation and could not be considered an employee). Plaintiff is unhappy that he was transferred to a different position at the same pay and is seeking to label this action as discrimination and an "adverse employment action." More, however, is required. *See* Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir. 1998) (holding that Title VII's protection against retaliation "extends to adverse actions which fall short of ultimate employment decision" but suggesting that a "threshold level of substantiality" must be met to trigger unlawful discrimination). There is a complete lacking of "substantiality" in the transfer of plaintiff.

This affirmative defense applies in racial harassment cases in the same way as sexual harassment cases.[2] In Russell, v. American Eagle Airlines, Inc., 46 F. Supp2d 1330 (S.D. Fla.

_____

[2]"It would be illogical to apply a different standard for employer liability in a Title VII case based on sexual harassment than in a Title VII case based on racial harassment since the Supreme Court has consistently applied the same standards to both types of claims. In fact, Faragher [sic] used an example of race discrimination when discussing its reasoning for allowing an employer an affirmative defense to vicarious liability. Faragher, 118 S. Ct. at 2288-89. Therefore, this court concludes that the affirmative defense set forth in Faragher and Burlington Industries applies to racial discrimination claims based on a hostile work environment." Williams v. Multnamoh Educ. Service Dist., 1999 WL 454633 (D. Or.); See also Russell v. American Eagle Airlines, Inc., 46 F. Supp.2d 1330 (S.D. Fla. 1999) (applying *Faragher* to racial harassment); Booker v. Budget Rent-A- Car Systems, 17 F. Supp.2d 735 (M.D. Tenn. 1998) (same); Leslie v. United Technologies Corp., 51 F. Supp. 2d 1332 (S.D. Fla. 1998) (same).

1999), the court concluded that the employer in a racial harassment case had met both of the conditions of the <u>Faragher</u> defense.  First, the defendant employer had submitted evidence of an internal grievance procedure which was outlined in its Administrative Regulations.   This Regulation was available to the Plaintiff.  <u>Williams</u>, 46 F. Supp2d at 1338-39.  Thus the first prong was met.   Secondly, the Plaintiff failed to show that he had brought the alleged discrimination incidents to the attention of the Employer through the grievance procedures.  <u>Id</u>. at 1339.   RIf the plaintiff unreasonably failed to avail herself [or himself] of the employer's preventative or remedial apparatus, she should not recover damages that could have been avoided if she had done so.  If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care . . . .0  <u>Faragher</u>, 118 S. Ct. at 2292.

In this case, no tangible adverse employment action was taken against Smiley. Smiley claims he has suffered discrimination by receiving a written reprimand. Adverse employment decisions involve hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. For these reasons, Smiley cannot establish any tangible adverse employment action.

Since no tangible employment action was taken against Smiley, the Defendants are entitled to its affirmative defense. First, DOC has in place a non-discrimination policy and grievance procedure. In fact, the non-discrimination policy and grievance mechanisms available to employees are available to employees. The non-discrimination policy and complaint mechanism can be found in the administrative regulations. (Exhibit 23). Because the DOC had promulgated an anti-discrimination policy and complaint mechanism and provided the Plaintiffs with such policies, the first element of the defense is satisfied. "While proof that an employer had promulgated an antiharassment [sic] policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." Faragher, 118 S. Ct. 2293.

Despite the fact the grievance procedures were in place and the Smiley knew of such procedures, failed to avail himself of the preventative opportunities. Smiley completely ignored the preventative and corrected opportunities provided by the DOC. Smiley can produce no evidence that he complained to the DOC about the alleged discrimination and that DOC failed to take action. Because Smiley knew, or should have known, of the grievance procedures and corrective opportunities provided by the DOC,

but failed to utilize them, the second prong to the affirmative defense is satisfied. Smiley has not and cannot explain his failure to properly file a discrimination complaint. For this reason, DOC cannot be held liable for the alleged race discrimination because Smiley unreasonably failed to avail himself of the well publicized grievance process and his Title VII race discrimination claims are due to be dismissed.

## IV.     PLAINTIFFS FAILED TO ESTABLISH THE NECESSARY ELEMENTS FOR A TITLE VII RETALIATION CLAIM.

As stated by this Circuit in <u>Meeds v. Computer Assoc. Internal</u>, 15 F.3d 1013, 1021 (11th Cir. 1994), "[A] plaintiff bringing a retaliation must establish a prima facie case by showing that 1) [h]e is engaged in statutorily protected expression, 2) that there was subsequently an adverse employment action, and 3) that there is a casual link between the protected expression and the adverse action." [3]

First, with respect to Plaintiffs Braswell and Underwood, they cannot meet their burden of proving that the making of false charges against a supervisor is a protected expression. <u>See</u> U.S. v. National Treasury Employees Union  513 U.S. 454, 467, 115 S.Ct. 1003, 1013 (1995) (characterizing the holding in [<u>Arnett v. Kennedy</u>, 416 U.S. 134, 160-161, 94 S.Ct. 1633, 1647-1648, (1974)] to be that "the employee's false accusation that his superiors had accepted a bribe [was] 'not protected by the First Amendment.'" ); <u>E.E.O.C. v. Total System Services, Inc.</u>  240 F.3d 899, 905 (11th Cir. 2001) (noting that, "an employee's knowingly false statements are not protected") (Edmondson, concurring);

---

[3] Since the claims for a retaliation claim under Title VII and the Fourteenth Amendment are essentially the same, Defendants will not make a separate argument with respect the retaliation claims made under Section 1983 by Plaintiffs *except with respect the <u>Mt. Heathy</u> defense.*

U.S. v. Cueto, 151 F.3d 620, 634 n.11 (7th Cir., 1998)(explaining that "[s]peech which is false and misleading is not protected by the First Amendment's right to freedom of speech. ")  Moreover, speech which is made as part of one's official duties is not protected speech for purposes of a retaliation claim.  See Garcetti v. Ceballos, 547 U.S. 410, 421,  126 S.Ct. 1951, 1960 (2006); Phillips v. City of Dawsonville, 499 F.3d 1239, 1242-43 (11th Cir. 2007).

Nor should Plaintiffs be allowed to claim that they were disciplined for the mere exercise of free speech.  Commissioner Allen had every right to base his decision on the finding of the I & I report that Braswell and Underwood had indeed made false criminal accusations against Hadley and others.   Similarly, Braswell and Underwood cannot prove a causal link between any protected expression and their alleged adverse employment action.

Second, with respect to Smiley (although it is not clear from the Complaint that he is actually making a retaliation claim), he cannot meet his burden of establishing a protected expression—falsifying one's time sheets is certainly not a protected expression.  Commissioner Allen had every right to base his decisions regarding Smiley on the findings of the disciplinary hearing not to mention Smiley's apparent confession.  Smiley also cannot prove that a causal link between any protected expression and their alleged adverse employment action.[4]  Perhaps most importantly, because Smiley did not claim retaliation as part of his EEOC filing, he is barred from asserting it in the instant action.  On this ground alone, all Plaintiffs' retaliation claims are due to be stricken upon summary judgment.

---

[4] Defendants adopt and incorporate their argument made above with respect to the lack of an adverse employment decision regarding Smiley.

## V.  WITH RESPECT TO PLAINTIFFS' SECTION 1983 RETALIATION CLAIMS, PLAINTIFFS CANNOT OVERCOME DEFENDANTS' "MT. HEALTHY" DEFENSE.

To the extent, Plaintiffs are asserting a section 1983 claim for retaliation, Defendants are entitled to summary judgment based on the so-called "Mt. Healthy" defense.

> The Mt. Healthy analysis in cases involving retaliation for exercising free speech requires that the plaintiff establish that the protected speech was a "substantial or motivating factor" in the employee's termination. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576. In Title VII, the standard is broader and requires only that the plaintiff prove that the protected expression and the termination were not "wholly unrelated."

Addison v. Gwinnett County, 917 F.Supp. 802, 811 (N.D.Ga.,1995)  In the instant case, Plaintiffs  cannot meet their additional burden of proving that preventing Plaintiffs' free speech was a "substantial or motivating factor" in the actions taken by Defendants relative to Plaintiffs. In fact, such a motive played no factor whatsoever in the actions taken by Defendants.

## VI. DEFENDANTS ALLEN AND HADLEY, IN THEIR INDIVIDUAL CAPACITIES, ARE ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFFS' DAMAGES CLAIMS.

The Defendants assert that they are entitled to qualified immunity for all those potential claims which seek damages.  It has long been the law that public officials are entitled to qualified immunity from damages if "their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would know." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court in Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), clarified the appropriate standard by concluding that qualified immunity "turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal

rules that were 'clearly established' at the time [the action] was taken".  The Court went on to note that, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  483 U.S. at 640.

Qualified immunity is an affirmative defense which must be asserted by the official claiming it. <u>Siegert</u>, U.S. at, 114 L.Ed.2d at 286; <u>Harlow</u>, 457 U.S. at 815; <u>Gomez v. Toledo</u>, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In determining qualified immunity, the Eleventh Circuit follows a two-step analysis:

> "l. The Defendant public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. <u>Rich v. Dollar</u>, 841 F.2d 1558, 1563 (11th Cir. 1988)...." And
>
> 2.  Once the Defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the Plaintiff to show lack of good faith on the Defendants part.  This burden is met by proof demonstrating that the Defendant public official's actions `violated clearly established constitutional law.'"
> <u>Suissa v. Fulton County, Georgia</u>, 74 F.3d 266, 269 (11th Cir. 1996), <u>Lowe v. Aldridge</u>, 958 F.2d 1565, 1570 (11th Cir. 1992).

The Defendants represent that all actions taken on their part were done within the scope of their discretionary authority.  As outlined in <u>Jordan v. Doe</u>, 38 F.3d 1559 (11th Cir., 1994), "discretionary authority" can be shown by "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."   In reversing the lower court, <u>Jordan</u> held that the Marshall's actions in that case were "discretionary" regardless of whether the actions could be characterized as ministerial or discretionary in nature and that it would be unwise to "engage in a case by case determination" of immunity based upon ministerial versus the discretionary nature of a particular act challenged.  As the Defendant has met the first criteria, the burden shifts to the Plaintiff to show a lack of

good faith by proving that the actions undertaken by this Defendant violated clearly established law. To overcome this enormous burden, a Plaintiff must come forward with particularized facts demonstrating why the public official is not entitled to claim that defense. Anderson v. Creighton, 483 U.S. at 646; Harlow, 457 U.S. at 818.

As the Eleventh Circuit has espoused, general propositions "have little to do with the concept of qualified immunity." Muhammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir. 1987); Crawford-El v. Britton, U.S., 118 S.Ct. 1584, L.Ed.2d (1998) as articulated in Muhammad:

> The words "clearly established ... constitutional right" may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of the claim based on (for example) the First Amendment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a clearly established right. The right must be sufficiently particularized to put potential Defendants on notice that their conduct probably is unlawful.

839 F.2d at 1425, quoting Azeez v. Fairman, 795 F.2d 1296, 1301 (7th Cir. 1986).

Moreover, the Eleventh Circuit, in Barts v. Joyner, 865 F.2d 1187 (11th Cir. l989), further clarified this concept by stating that the question concerning qualified immunity must be sharply focused:

> The question in this case is not whether it is clearly established that unreasonable seizures are prohibited; they are. Nor is the question whether probable cause is necessary for a lawful warrantless arrest; it is. Nor is the question whether an involuntary trip to the police station can violate the fourth amendment; it can. The question in this case is far more sharply focused: in March 1983, was it clearly established in this circuit that it was an unconstitutional seizure for a single police officer - shortly after a murder - to have a person in a public place accompany him (along with other family members who were potential witnesses) to police headquarters for further questions, where the person had initiated contact with law enforcement officials by going to a police station to report the murder, had claimed to have seen the shooting and the assailant who was

still at large, had remained in the officer's presence while willingly assisting with the investigation, and never objected to traveling to headquarters? The answer is No.

In <u>Lassiter v. Alabama A& M University</u>, 28 F.3d 1146, 1150 (11th Cir., 1994) (en banc), the Court commented that:

> "The most common error we encounter, as a reviewing court, occurs on this point: Courts must not permit Plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights'".

In <u>Alexander v. University of North Florida</u>, 39 F.3d 290 (11th Cir. 1994), the Eleventh Circuit observed: "As we explained in <u>Lassiter v. Alabama A & M University</u>, 28 F.3d 1146 (11th Cir. 1994)(en banc), qualified immunity for government officials is the rule, liability and trials for liability the exception." Moreover, in <u>Belcher v. City of Foley, Alabama</u>, 30 F.3d 1390, 1400 (11th Cir. 1994), the Court found that "law is clearly established by holdings, not by inferences from language in opinions." As if to strengthen this already straightforward rule, the Eleventh Circuit reiterated that in order for a law to be "clearly established", the law by which officials should be evaluated must be 1) pre-existing; 2) obvious and 3) mandatory. <u>Hill v DeKalb</u> <u>Regional Youth Detention Center</u>, 40 F.3d 1176 (11th Cir. 1994). Qualified immunity must focus on the ". . . actual, on the specific, on the details of concrete cases". <u>Lassiter</u> 28 F3d 1146, 1150 (11th Cir 1994). "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases" Adams <u>v. St. Lucie County Sheriff's Dept</u>., 962 F.2d 1563 (11th Cir. 1992).

There is no cause of action under the Fourteenth Amendment for discrimination unless the Plaintiffs establish the intent to discriminate by the Defendants. <u>See, e.g.</u>

Mencer v. Hammonds, 134 F. 3d 1066 (11th Cir. 1998); see also Parks v. City of Warner Robbins, Georgia, 43 F. 3d 609, 619 (11th Cir. 1995).

 The Plaintiff's burden in establishing a constitutional violation is much steeper than that required to show a Title VII violation. Here, the Plaintiffs have neither suffered a constitutional deprivation nor have they established the transgression of a bright line or clearly established law.  Quite simply, Plaintiffs have failed to allege "the existence of a clear, factually defined, well-recognized right of which a reasonable [official] should have known." Barts, 865 F. 2d at 1190 (citing Clark v. Evans, 840 F. 2d 876 (11th Cir. 1988)).  It is not a constitutional violation to take the employment actions alleged here where there are findings made know the decision-maker (in this case, Commissioner Allen) that the Plaintiffs falsified time records and made serious, even criminal, unsubstantiated charges against their superior.[5]  Nor have the Plaintiffs satisfied the mandate that:

> …." 'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right.' Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987).

Barts, 865 F. 2d at 1190. "For purposes of qualified immunity, the plaintiff must do more than simply make 'general, conclusory allegations of some constitutional violation or [] state broad legal truisms'.

 As the Supreme Court recently stated regarding improper motive cases such as this one, "[w]hen a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a

---

[5]   As established above, since Defendant Hadley exercised no authority with respect to the employment decisions challenged, he is certainly entitled to qualified immunity.

way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." <u>Crawford-El,</u> 118 S.Ct. Furthermore, when intent is at issue, as it is here, "the primary focus is not on any possible animus directed at the Plaintiff; rather, it is more specific, such as intent to disadvantage all members of a class that includes the plaintiff….or to deter public comment on a specific issue of public importance." <u>Id.</u> at 1594 (internal citation omitted) "[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated." <u>Id.</u> at 1592 Qualified immunity bars the recovery of any money damages against the Defendants in their individual capacities because their conduct was objectively reasonable and they would have reached the same decisions regarding the Plaintiffs.

### VII. THE ELEVENTH AMENDMENT PROHIBITS THE AWARD OF ANY MONEY DAMAGES UNDER SECTION 1983 AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

Since Defendants Allen and Hadley, in their official capacities, represent the State of Alabama, no claim of damages against them under 42 U.S.C. § 1983 can be asserted, according to the Eleventh Amendment to the United States Constitution.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-167, and n. 14, 105 S.Ct. 3099, 3104-3106, and n. 14 (1985); <u>Alabama v. Pugh,</u> 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-3058 (1978).

**CONCLUSION**

Based on the foregoing, Defendants Allen and Hadley respectfully request that their Motion for Summary Judgment be granted and that all claims against them be dismissed.

Respectfully submitted,

Kim T. Thomas
General Counsel

/s/ Bart Harmon_____
Bart Harmon (HAR 127)
Assistant General Counsel

**ADDRESS OF COUNSEL**
Alabama Department of Corrections
Legal Division
301 South Ripley Street
P. O. Box 301501
Montgomery, Alabama 36130-1501
(334) 353- 4859

## CERTIFICATE OF SERVICE

I do hereby certify that on the 5th day of September, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

K. Anderson Nelms, Esq.
Law Offices of Jay Lewis, LLC
Attorney for the Plaintiffs
847 South McDonough Street, Suite 100
Montgomery, AL  36104

/s/ Bart Harmon
Bart Harmon (HAR 127)
Assistant General Counsel