IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KEITH BRASWELL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-cv-833-MEF |
| | ) | |
| RICHARD ALLEN, *et al.*, | ) | (WO recommended for publication) |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Keith Braswell ("Braswell"), Anthony Smiley, Sr. ("Smiley"), and Roderick
Underwood ("Underwood") (collectively "Plaintiffs") filed a Complaint (Doc. #1) on
September 14, 2007, bringing claims of race discrimination and retaliation against
Richard Allen and Charles Hadley ("Defendants") relating to their employment with
Alabama Department of Corrections ("ADOC").  Pursuant to 42 U.S.C. § 1981 ("section
1981") and 42 U.S.C. § 1983 ("section 1983"), Plaintiffs allege that they have been
denied rights created by federal statutes and by the United States Constitution.  Plaintiffs
also allege race discrimination and retaliation pursuant to 42 U.S.C. § 2000e, *et seq*
("Title VII").  Plaintiffs seek declaratory relief, compensatory damages, punitive
damages, equitable relief, costs, and attorneys' fees.  This cause is before the Court on
Defendants' Motion for Summary Judgment (Doc. # 24) filed on September 5, 2008.  In
this motion, Defendants argue that they are entitled to summary judgment because

Plaintiffs cannot establish a *prima facie* case on any of their claims.  The Court agrees and finds that the motion for summary judgment is due to be GRANTED for the reasons set forth in this Memorandum Opinion and Order.

## II. JURISDICTION AND VENUE

Jurisdiction over Plaintiffs' federal claims is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in

support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. FACTS

The Court has carefully considered all documents, declarations and affidavits submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

3

**A. The Parties**

Braswell, Underwood, and Smiley are African American males.  The ADOC employed Plaintiffs as correctional officers at the Red Eagle Honor Farm ("Red Eagle") in 2006.  Plaintiffs assert numerous employment discrimination and retaliation claims against Richard Allen ("Allen"), Commissioner of the ADOC, and Charles Hadley ("Hadley"), then Warden of Red Eagle, in their official capacities and individually.

**B. Smiley's Suspension and Related Administrative Proceedings**

**1. Smiley's Suspension**

On March 28, 2006, Smiley's assigned shift was from 7:00 a.m. to 4:00 p.m. Hadley saw Smiley leave his shift at 12:15 p.m. and checked the log book.  He discovered that Smiley had signed in at 6:00 a.m. and signed out at 2:00 p.m.  Smiley alleges that he entered his time incorrectly because he had worked over-time on March 26, 2006, and was confused about how to properly record his time.  Because Hadley had seen Smiley leave early and record the wrong time, Hadley accused Smiley of falsifying time sheets and notified ADOC Personnel Division.  ADOC Personnel Division instructed Hadley to give Smiley at five-day suspension.

**2. Smiley's Administrative Hearing**

On May 23, 2006, Red Eagle held an administrative hearing on Smiley's suspension.  Attorney Julian McPhillips represented Smiley.  The Hearing Officer, Warden James DeLoach, found Smiley guilty and recommended a written reprimand.

4

Allen approved the written reprimand, and Hadley issued the reprimand to Smiley on June 9, 2006.  Smiley submitted a rebuttal in response in which Smiley admitted he did not properly obtain Hadley's permission to change his work hours.  (Doc. #26 Ex. 1).

### 3. Braswell and Underwood's Statements in Support of Smiley

Plaintiffs Braswell and Underwood prepared statements for Smiley's administrative hearing.  (Doc. #26 Exs. 4, 7).  Their statements accused their supervisors and colleagues of acts that violate ADOC policies and the Alabama Ethics Act.[1]  An investigation by ADOC Investigation & Intelligence Division found that Braswell and Underwood's statements were unsubstantiated.  (Doc. #26 Ex. 5).  Braswell's statement also contended that Defendants did not discipline a white officer, Jerry Odom, for conducting personal business while working.  Defendants introduced evidence that Odom was not disciplined because an investigation conducted by ADOC Investigation & Intelligence Division showed that Odom had not conducted personal business while working.  (Doc. #37 Ex. 1).

Plaintiffs also allege a Caucasian officer, Donnie Brown ("Brown"), submitted a statement at Smiley's hearing and was not reprimanded.  (Doc. #25 Exs. 20, 22).  Defendants presented evidence that Brown's statement included an accusation that a steward had failed to appear for his shift on one occasion.  (Doc. #37 Ex. 1).  Plaintiffs

---

[1]Braswell and Underwood accused Hadley and other ADOC employees of using inmates to work on personal projections for personal gain, taking state property home for personal gain, and being late for work.

did not provide any evidence of the content of Brown's statement.

**C. Alleged Discriminatory and Retaliatory Conduct**

In this lawsuit, Plaintiffs contend that they were discriminated against on the basis of their race.  Furthermore, they allege that Defendants retaliated against them after they participated in Smiley's administrative hearing.

### 1. Smiley's Claims

Smiley alleges that he was discriminated against on the basis of his race when he was given a reprimand in June of 2006.  He also alleges that he was demoted when he was transferred from the first shift (9 a.m. to 4 p.m.) to the third shift (10 p.m to 6 a.m.) and from Inmate Control System Supervisor to third-shift supervisor.  Smiley does not provide any evidence that the transfer affected Smiley's pay, seniority, or responsibilities.

Additionally, Smiley alleges that he received an unjust employment evaluation in January of 2007 that diminished his likelihood of being promoted.  Smiley offers no evidence with respect to this allegedly unjust evaluation.  Defendants introduced evidence that Smiley's 2006/2007 annual appraisal dated January 4, 2007, contains a rating of "exceeds standards."  (Doc. # 26 Ex. 2).  Smiley's evaluator described him as someone who "has done an exceptional job" and "deserves this rating of exceeds standards."  *Id.* In addition, Smiley received a two-step pay increase on his anniversary date of April 1, 2007, the maximum increase allowed by ADOC Personnel, in part because of his positive evaluation.  (Doc. #26 Ex. 3).  The undisputed evidence before this Court establishes that

6

even with a reprimand, ADOC regulations do not prevent an employee from getting a promotion.  (Doc. #37 Ex. 1).

### 2. Braswell and Underwood's Claims

In addition, Braswell and Underwood allege that Hadley unjustly transferred them to other facilities as a consequence of their statements at Smiley's hearing.  On June 22, 2006, Allen ordered Braswell transferred to the Draper Correctional Facility and Underwood transferred to Staton Correctional Facility.  (Doc. #26 Exs. 17, 8).  Hadley also requested that ADOC dismiss Braswell and Underwood, but instead ADOC instructed Hadley to proceed with suspensions and set hearings for both Plaintiffs.  At Braswell's hearing on October 19, 2006, Willie Thomas was the Hearing Officer, Hadley acted as the presenting officer, and attorney Jason Manasco represented Braswell.  Hearing Officer Thomas recommended a twenty-day suspension after finding Braswell guilty of making false statements.  (Doc. #26 Ex. 11).  Allen later reduced Braswell's suspension to ten days.

Similar parties were present at Underwood's disciplinary hearing on October 19, 2006.  Willie Thomas presided as the Hearing Officer, Hadley acted as the presenting officer, and attorney Manasco represented Underwood.  Underwood presented evidence at his hearing and called witnesses.  (Doc. #36 Ex. 19).  Hearing Officer Thomas found Underwood guilty of making false statements and recommended a ten-day suspension.  (Doc. #26 Ex. 10).  Allen reduced Underwood's suspension to five days.

**D. Plaintiffs' Charges of Discrimination**

On August 23, 2006, Underwood signed a Charge of Discrimination against the ADOC with the Equal Employment Opportunity Commission ("EEOC"). By signing the Charge of Discrimination, Underwood declared under perjury that his statements in the charge were true and correct. In the charge, Underwood complained of discrimination on the basis of his race. Underwood represented that Hadley recommended his dismissal for his statement at Smiley's hearing and did not discipline a white officer for a similar statement. Underwood also complained of retaliation.

On September 11, 2006, Smiley signed a Charge of Discrimination against ADOC with the EEOC. Smiley complained of discrimination on the basis of race and stated that he was given a written reprimand for leaving his assigned post. He also stated that he was aware of a white correctional officer who was not disciplined for the same conduct. Smiley did not check the "retaliation" box on the Charge of Discrimination and claimed that the discrimination took place from March through May of 2006.

On September 18, 2006, Braswell signed a Charge of Discrimination against ADOC with the EEOC. Braswell complained of discrimination on the basis of race and retaliation. Braswell cited two incidents where the ADOC allegedly acted unlawfully by (1) unfairly disciplining him for his statement at Smiley's hearing, and (2) falsely accusing him of failing to assist another officer.[2]

---

[2]The second incident was not made a part of this lawsuit.

**E. The Lawsuit**

On September 14, 2007, Plaintiffs filed suit in this Court.  Plaintiffs seek

declaratory and equitable relief as well as damages for alleged discrimination on the basis

of race and retaliation.  Smiley complained of the following acts of discrimination: (1)

Defendants gave him a reprimand and did not give Caucasian employees a reprimand for

similar actions, (2) Defendants transferred Smiley from the first shift to the third shift and

from Inmate Control Supervisor to third-shift supervisor and did not transfer similarly

situated Caucasian employees, and (3) Defendants gave him an unfair employment

evaluation and did not give similarly situated Caucasian employees unfair evaluations.

Plaintiffs Braswell and Underwood complained that they were unlawfully discriminated

against when Defendants transferred them to other facilities and did not transfer similarly

situated Caucasian employees.  Plaintiffs Braswell and Underwood also complained of

retaliation.  Plaintiffs sought a remedy for the alleged discrimination and retaliation

pursuant to sections 1981 and 1983 (Count One) and Title VII (Count Two).

## V. DISCUSSION

Plaintiffs seek recovery pursuant to section 1981, section 1983, and Title VII.  The

Court will first consider Plaintiffs' Title VII claims.  It will then discuss Plaintiffs'

section 1981 and section 1983 claims.

**A. Title VII Claims**

An employee bringing a claim under Title VII must initially establish a *prima facie*

case of discrimination through one of three methods: by presenting direct evidence of

discriminatory intent, presenting circumstantial evidence of discrimination by satisfying

the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its

progeny, or by introducing statistical evidence of discrimination.  *Walker v. NationsBank

of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995).  Because Plaintiffs have presented

neither appropriate statistical evidence, nor direct evidence, in support of his claims of

discrimination, the Court will address only Plaintiffs' circumstantial evidence.

To establish a discrimination claim by circumstantial evidence using the

*McDonnell Douglas* framework, the employee has the initial burden of showing, by a

preponderance of the evidence, a *prima facie* case of the proscribed practice.  *Young v.

General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied,* 488 U.S. 1004

(1989).  The essence of the *prima facie* case is that the employee presents circumstantial

evidence sufficient to generate a reasonable inference by the fact finder that the employer

used prohibited criteria in making an adverse decision about the employee.  If established,

the *prima facie* case raises a rebuttable presumption that the employer is liable to the

employee.  *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981).

"Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff

establish facts adequate to permit an inference of discrimination."  *Holifield v. Reno,* 115

F.3d 1555, 1562 (11th Cir. 1997).

10

The Eleventh Circuit Court of Appeals has repeatedly emphasized that the requisite showings that make up a *prima facie* case are not meant to be rigid or inflexible. *See, e.g., Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999) (collecting cases).

> In cases where the evidence does not fit neatly into the classic prima facie case formula, for example, [the Eleventh Circuit has] stated that "[a] prima facie case of disparate treatment can be established by any 'proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.'"

*Id.* at 1268 (citing *Hill v. Metro. Atlanta Rapid Trans. Auth.,* 841 F.2d 1533 (11th Cir. 1988), *modified,* 848 F.2d 1522 (11th Cir. 1988) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978))).

Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d at 1564 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)). The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564. This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001).

11

If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination.  *See, e.g., Holifield,* 115 F.3d at 1565; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision").  Thus, once the employer articulates a legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)).  The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs,* 106 F.3d at 1528.  A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

To make out a *prima facie* case of racial discrimination under Title VII, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly

situated employees outside his class more favorably.  *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  Defendants do not contend that Plaintiffs are not members of a protected class or that Plaintiffs are not qualified for their jobs.  Defendants argue that Plaintiffs cannot establish a *prima facie* case of race discrimination because none of Defendants' acts constitute adverse employment actions and Plaintiffs cannot show Defendants treated similarly situated employees outside Plaintiffs' class more favorably.  The Court agrees.

### 1. Smiley's Title VII Claims

#### a. Smiley's Claims of Alleged Discrimination

Smiley argues he was discriminated against on three occasions: (1) a written reprimand on May 23, 2006, (2) his shift transfers, and (3) an unjust employment evaluation on January 4, 2007.  The Court concludes that no reasonable fact finder could find that these occasions constitute an adverse employment action.  Therefore, Plaintiffs are unable to establish a *prima facie* case of discrimination with respect to Smiley.

#### i. Written Reprimand

For the purposes of a Title VII discrimination claim, the Eleventh Circuit defines an adverse employment action as an "ultimate employment decision" or some other showing of substantiality in the employment context.  *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).  An ultimate employment decision includes termination, failure to hire, or

13

demotion. *Crawford*, 529 F.3d at 970. More particularly, when defining the level of substantiality required for a Title VII discrimination claim, the Eleventh Circuit requires an employee to demonstrate he suffered "a serious and material change in the terms, conditions, or privileges of employment" to show an adverse employment action. *Davis*, 245 F.3d at 1239. A reprimand that has a meaningful adverse effect on an employee's working conditions may be cognizable under Title VII. *Keenan v. American Cast Iron Pipe Co.*, 707 F.2d 1274, 1277 (11th Cir. 1983). However, "the protections of Title VII simply do not extend to 'everything that makes an employee unhappy.'" *Davis*, 245 F.3d at 1242 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). A reprimand does not constitute an adverse employment action when the employee suffers no tangible harm as a result. *Davis*, 245 F.3d at 1240-1241; *Wallace v. Ga. Dep't of Transp.*, No. 06-13345, 2006 WL 3626967, at *2 (11th Cir. Dec. 13, 2006).

Smiley's reprimand does not constitute an adverse employment action sufficient to establish a *prima facie* case of discrimination. Defendant Hadley issued Smiley a written reprimand after Smiley had been found guilty of falsifying time sheets at an administrative hearing. Smiley has presented no evidence that the reprimand led to tangible harm in the form of a loss of pay or benefits, or lost opportunity for a job promotion. Therefore, no reasonable fact finder could find that the reprimand affected Smiley's terms, conditions, or privileges of employment to constitute an adverse employment action within the meaning of Title VII.

14

### ii. Shift Transfer

Courts have been reluctant to hold that job reassignments and lateral transfers amount to adverse employment action when unaccompanied by any tangible harm. *See, e.g., Williams v. Bristol-Myer Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1994) (holding that "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action"); *see also Kocsis v. Multi-Care Mgmt., Inc.*, 79 F.3d 876, 885 (6th Cir. 1996) (finding that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims"); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"). In unusual instances, a change in work assignments may be so substantial and material that it alters the "terms, conditions, or privileges" of employment. *Davis*, 245 F.3d at 1245; *cf. McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077-78 (11th Cir. 1996). However, the Eleventh Circuit has noted that "[i]n the vast majority of instances ... an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause." *Id.* at 1245. Therefore, for a shift transfer to constitute an adverse employment action within the meaning of Title VII, the transfer must result in

15

a tangible harm.

Plaintiffs allege Smiley suffered multiple adverse employment actions when he was transferred from the first shift (9 a.m. to 4 p.m.) to the third shift (10 p.m to 6 a.m.) and from Inmate Control System Supervisor to third-shift supervisor.  Plaintiffs do not provide any evidence that Smiley was demoted or that Smiley's shift transfer resulted in any tangible change in his employment.  Therefore, no reasonable fact finder could find Smiley's transfer constitutes an adverse employment action and this claim also fails to meet the *prima facie* requirements of a discrimination claim.

### iii. 2006/2007 Employment Evaluation

Plaintiffs argue that Smiley's 2006/2007 annual appraisal constitutes an adverse employment action because it affected his likelihood of promotion.  A poor performance evaluation that directly results in denial of pay raise of any significance constitutes an adverse employment action.  *Gillis v. Georgia Dept. of Corrections*, 400 F.3d 883, 884 (11th Cir. 2005); *McCabe v. Sharrett*, 12 F.3d 1558, 1564 (11th Cir. 1994).  In *Gillis v. Georgia Dept. of Corrections*, the Circuit emphasized that the key inquiry is whether there is a loss of compensation.  *Id.* at 887.  There, Gillis would have received an additional $912.36 per year in compensation if her evaluation had stated that she exceeded expectations instead of meeting expectations.  *Id.* at 888.

Here, Smiley worked at the same job he had before the disciplinary hearing, holds the same title, received an "exceeds expectations" evaluation and earned the highest wage

increase allowable by ADOC policies.  Plaintiffs have not introduced any evidence that Smiley's evaluation affected his pay raise.  Indeed, the undisputed evidence before this Court establishes that Smiley received a two-step pay increase on his anniversary date of April 1, 2007, the maximum increase allowed by ADOC Personnel, and that ADOC regulations do not prevent an employee from getting a promotion even with a reprimand. Therefore, no reasonable jury could find that Smiley's annual appraisal constituted an adverse employment action.

### b. Smiley's Claim of Alleged Retaliation

Defendants argue that Smiley is barred from asserting a Title VII claim for retaliation because he did not allege retaliation in his EEOC Charge of Discrimination.  It is unclear from the Complaint whether Plaintiffs allege Defendants unlawfully retaliated against Smiley.  In addition, Plaintiffs do not respond to Defendants' arguments that Smiley's retaliation claim is procedurally barred and substantively insufficient in Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment.  (Doc. #32).  Because the Court finds that Smiley has not alleged a retaliation claim and because Smiley has made no attempt to present argument or evidence in support of such a claim, the Court finds that judgment is due to be entered in favor of Defendants and against Smiley on any claim of retaliation.

### 2. Braswell and Underwood's Title VII Claims

#### a. Timeliness of Braswell and Underwood's Charge of Discrimination

Defendants argue that Braswell and Underwood failed to file their complaint within ninety-days from the time each received their notice of right to sue from the EEOC.  Pursuant to Title VII, a plaintiff must assert a civil action alleging a violation of the same claim within ninety days of receiving a notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1).  The ninety-day period commences upon the claimant's receipt of his notice of right to sue.  *Id.*  Once a defendant contests whether a plaintiff filed his complaint within ninety days, the plaintiff has the burden of establishing that he met the filing requirement.  *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000). In *Green v. Union Foundry Co.*, 281 F.3d 1229 (11th Cir. 2002), the Eleventh Circuit held the district court properly granted the defendant's summary judgment where the plaintiff filed his complaint ninety-seven days after the EEOC mailed his right to sue letter and where the plaintiff presented no evidence of his date of receipt.  *Id.*  Similarly, in *Martinez v. United States Sugar Corp.*, 880 F. Supp. 773 (M.D. Fla. 1995), *aff'd* 7 F.3d 497 (11th Cir. 1996), the district court granted summary judgment to the defendant when the plaintiff could not remember receiving the right to sue letter and filed suit ninety-five days after the EEOC mailed the letter.

Here, the EEOC mailed Braswell and Underwood their right to sue letters on or before June 4, 2007.  (Doc. #26 Exs. 12, 14, 15).  Plaintiffs filed this action on September

14, 2007 (Doc. #1), 102 days after the EEOC mailed the notice of right to sue to Braswell and Underwood.  Plaintiffs have presented no evidence that Braswell and Underwood filed within the ninety-day requirement.  Therefore, the Court finds that Defendants are entitled to summary judgment on Braswell and Underwood's Title VII claims because they failed to commence this action within the statutorily proscribed time.

### 3. Title VII *Faragher* Defense

Defendants argue that Plaintiffs' Title VII claims cannot survive Defendants' *Faragher* defense.  The Supreme Court recognizes that employers may assert an affirmative defense in Title VII sexual harassment cases when the employer took no tangible employment action and the employee failed to take advantage of administrative remedies ("*Faragher* defense").  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  Some courts have applied *Faragher* to racial harassment cases.  *See, e.g., Williams v. Multinamoh Educ. Serv. Dist.*, 1999 WL 454633 (D. Or. 1999) (applying *Faragher* to racial harassment cases); *Russell v. American Eagle Airlines, Inc.*, 46 F. Supp. 2d 1330 (S.D. Fla. 1999) (same). Defendants argue that they may assert a *Faragher* defense to Plaintiffs' discrimination and retaliation claims.  Defendants fail to cite any authority that extends *Faragher* outside the harassment context, nor has the Court been able to find such authority.  Therefore, the Court cannot find that the *Faragher* defense presents any basis on which to grant Defendants' Motion for Summary Judgment as to any of the remaining claims in this action.

**B. Section 1981 and Section 1983 Claims**

Plaintiffs seek recovery pursuant to Title VII, section 1981 and section 1983.  In this Circuit, Title VII, section 1981 and section 1983 claims have the same legal elements when the claims are based on the same set of facts.  *See, e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008); *see also Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805-806 (11th Cir. 1995).  Because Plaintiffs' claims are based on the same facts, the Court's discussion of Plaintiffs' discrimination claims are the same whether the Court is considering Plaintiffs claims pursuant to Title VII, section 1981, or section 1983.  Consequently, the Court's earlier discussion of Plaintiffs' Title VII claims applies to the Court's analysis of Plaintiffs' section 1981 and section 1983 claims.

**1. Smiley's Section 1981 and Section 1983 Claims**

**a. Smiley's Claims of Alleged Discrimination**

Smiley alleges Defendants discriminated against him on three occasions: (1) a written reprimand on May 23, 2006, (2) his shift transfers, and (3) an unjust employment evaluation on January 4, 2007.  The Court determined that no reasonable fact finder could find these incidents constitute an adverse employment action under Title VII.  *See supra* Section V.1.a.  Because the legal elements of Title VII, section 1981 and section 1983 are the same, Defendants are entitled to summary judgment on Smiley's section 1981 and section 1983 discrimination claims.

### b. Smiley's Claim of Alleged Retaliation

The Court finds that judgment is due to be entered in favor of Defendants against Smiley on any claim of retaliation because it finds Smiley has not alleged a retaliation claim nor made any attempt to present argument or evidence in support of such a claim. *See supra* Section V.1.a.

### 2. Braswell and Underwood's Section 1981 and Section 1983 Claims

### a. Braswell and Underwood's Claims of Alleged Discrimination

To make out a prima facie case of discrimination on the basis of race, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Defendants do not contend that Braswell and Underwood are not members of a protected class or that Plaintiffs are not qualified for their jobs. Defendants argue that Braswell and Underwood cannot establish a *prima facie* case of race discrimination because none of Defendants' acts constitute adverse employment actions and Plaintiffs cannot show Defendants treated similarly situated employees outside Plaintiffs' class more favorably. The Court agrees.

Plaintiffs claim Defendants unlawfully discriminated against Braswell and Underwood for their statements at Smiley's hearing in violation of sections 1981 and 1983 by transferring them to other facilities. Although Plaintiffs allege that the transfers resulted in significantly longer commutes, loss of seniority status and loss of opportunity

21

to receive a pay raise or promotion, Plaintiffs did not present the Court with any such evidence. Indeed, there is no evidence before the Court from which a reasonable jury could find that the transfers resulted in longer commutes, loss of seniority status or loss of opportunity to received a pay raise or promotion. Therefore, Braswell and Underwood's discrimination claim with respect to their transfers fail the third prong of a *prima facie* discrimination case.

In addition, Plaintiffs' claim fails the last prong because Plaintiffs cannot establish that similarly situated Caucasian officers were treated differently. To determine whether employees are similarly situated, the court evaluates "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). A comparator is an employee "similarly situated [to the plaintiff] 'in all relevant respects.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). The "'quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia*, 171 F.3d at 1368) (citation omitted). Misconduct merely "similar" to the misconduct of the disciplined plaintiff is insufficient. *Id*. at n.2.

Here, a Caucasian employee, Donnie Brown, also provided a written statement at Smiley's hearing and, unlike Braswell and Underwood, did not suffer disciplinary action

for his statement.  Plaintiffs did not introduce any evidence regarding the content of Brown's statements.  Defendants presented evidence that Brown's statement included a single accusation that a steward had failed to appear for his shift.  In contrast, Braswell and Underwood's statements included accusations against several employees that could have resulted in criminal charges.  No reasonable fact finder could find that Brown, Braswell, and Underwood are similarly situated due to the material difference in the statements.  Braswell and Underwood's accusations were much more serious than Brown's.  Comparators "must be similarly situated 'in all relevant aspects.'" *Wilson*, 376 F.3d at 1091 (quoting *Holifield*, 115 F.3d at 1562).  Because Plaintiffs are unable to establish a *prima facie* case of discrimination with respect to Braswell and Underwood's transfers, Defendants are entitled to summary judgment on Plaintiffs' race discrimination claims.[3]

### b. Braswell and Underwood's Claims of Alleged Retaliation

### 1. Retaliation for Complaints about Discrimination

It is unclear whether Plaintiffs allege First Amendment retaliation or statutory retaliation pursuant to Title VII, section 1981, or section 1983 in their Complaint.  (Doc.

---

[3]Even if Plaintiffs had established a *prima facie* case of discrimination, Defendants offered convincing evidence that Allen had a legitimate non-discriminatory reason for transferring Braswell and Underwood to other facilities.  Both had made unsubstantiated claims against their supervisor and a co-worker and Allen believed their transfers were in their best interests.  It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated.  *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir. 2000); *Roja v. Florida*, 285 F.3d 1339 (11th Cir. 2002).  Because Plaintiffs failed to offer evidence from which a reasonable jury could find this legitimate non-discriminatory reason was a pretext for discrimination, Defendants are also entitled to summary judgment on this claim.

#1).  In Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (Doc. #32), Plaintiffs mention the *McDonnell Douglas* framework but also argue that "Plaintiffs' expressions are constitutionally protected by the First Amendment."[4]  Section 1981 prohibits an employer from retaliating against its employee in response to the employee's complaint of race-based discrimination.  *See Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998).  Section 1983 is the vehicle through which plaintiffs must pursue a section 1981 retaliation claim.  *See Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000).

Here, Plaintiffs do not provide support for a section 1981 retaliation claim nor do they introduce evidence that Defendants retaliated against Braswell and Underwood in response to their statements.  The Court has carefully reviewed Braswell and Underwood's written statements.[5]  Even viewing the facts in a light most favorable to the Plaintiffs, no reasonable jury could find that Braswell or Underwood complained of race-based discrimination.  In short, based on the record before the Court, no reasonable fact finder could find that Plaintiffs have established a section 1981 retaliation claim.  Thus, Defendants are entitled to summary judgment on any such claim to the extent it has been asserted.

---

[4]Plaintiffs continually confused First Amendment retaliation claims with Title VII retaliation claims in their briefs.  For example, Plaintiffs argue that "[b]ecause such speech is protected by the First Amendment, Plaintiffs Braswell and Underwood have satisfied the requisite elements of their Title VII retaliation claims."  The Court cannot agree with this analysis, and Plaintiffs provided no legal authority supporting this contention.

[5]Plaintiffs failed to provide Braswell's oral testimony at Smiley's hearing.

## 2. Retaliation for First Amendment Speech

The Court will now address Plaintiffs' retaliation claim as a First Amendment

claim.  In resolving a First Amendment retaliation claim, courts must use the *Pickering*

balancing test to determine whether a government employer has unlawfully retaliated

against an employee.  *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).  The first step of

the *Pickering* analysis is to determine (1) if the government employee spoke as an

employee or citizen, and (2) if the speech addressed an issue relating to a matter of public

concern.  *D'Angelo v. School Bd. of Polk County, Fla.*, 497 F.3d 1203, 1209 (11th Cir.

2007) (following *Garcetti v Ceballos*, 547 U.S. 410 (2006)).  To qualify as

constitutionally protected speech in the employment retaliation context, the speech must

be made by a government employee speaking as a citizen and be on a subject of public

concern.  *See Phillips v. City of Dawsonville*, 499 F.3d 1239, 1242 (11th Cir. 2007) (per

curiam) (concluding in a First Amendment retaliation case that the government employee

"was speaking in accord with her duty as the City Clerk and not as a private citizen");

*Vila v. Padrón*, 484 F.3d 1334, 1339 (11th Cir. 2007) (acknowledging after *Garcetti* that,

to analyze a First Amendment retaliation claim for speech by a government employee,

"[t]he threshold question is whether [the government employee] spoke as a citizen on a

matter of public concern").  This "inquiry is a practical one."  *Garcetti*, 547 U.S. at 413.

In *Boyce v. Andrew*, 510 F.3d 1333 (11th Cir. 2007), this Circuit held that plaintiffs'

complaints about workload, made through internal channels, were not protected by the

First Amendment because they were speaking as government employees about their jobs.

25

When an employee speaks as an employee, then there can be no First Amendment issue and the constitutional inquiry ends without consideration of the *Pickering* test. *Id.* at 1343. "[T]he *Pickering* balance is not triggered unless it is first determined that the employee's speech is constitutionally protected." *Ferrara v. Mills*, 781 F.2d 1508, 1513-14 (11th Cir. 1986).

Here, the threshold question is whether Braswell and Underwood made statements as private citizens on a matter of public concern at Smiley's administrative hearing. "[T]he relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is 'whether the purpose of the plaintiff's speech was to raise issues of public concern.'" *Boyce*, 510 F.3d at 1344 (quoting *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000)). The court should examine the content, form, and context of the speech to determine its "main thrust." *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1304 (11th Cir. 2005). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connwick v. Myers*, 461 U.S. 138, 147 (1983)).

The record in this case reveals that the statements of Braswell and Underwood, while intermingled with issues of ethics and ADOC management, were not intended to address matters of public concern from the perspective of a citizen. Both Braswell and Underwood prepared statements for Smiley's hearing, but only Braswell testified. The statements were prepared for Smiley's benefit to bolster his good character. The hearing

26

was held pursuant to ADOC policies and was not an open forum. Indeed, Braswell and Underwood's complaints were made exclusively through internal channels. Because Braswell and Underwood were not speaking as a private citizens, their speech is not constitutionally protected. Therefore, there is no genuine issue of material fact, and Defendants are entitled to summary judgment on the retaliation claims.

### 3. Section 1981 and 1983 Defenses

Defendants assert a variety of defenses to Plaintiffs' sections 1981 and 1983 claims, including qualified immunity, the Eleventh Amendment, and *Mt. Healthy*. Because Defendants' Motion for Summary Judgment is due to be granted, the Court will not address these issues.

## VI. CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, the Court finds that Defendants are entitled to summary judgment on all of Plaintiffs' claims. Accordingly, it is hereby ORDERED as follows:

(1) Defendants' Motion for Summary Judgment (Doc. # 24) is GRANTED;

(2) All of Plaintiffs' claims are DISMISSED WITH PREJUDICE;

(3) The trial and pretrial in this matter are CANCELLED;

(4) The Court will enter a separate final judgment in favor of Defendants consistent with this Memorandum Opinion and Order.

DONE this the 19th day of November, 2008.

        /s/ Mark E. Fuller
        CHIEF UNITED STATES DISTRICT JUDGE